UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEONDRE CASEY, | Case No. 2:22-cv-12604 |
| *Plaintiff,* | Jonathan J.C. Grey<br>United States District Judge |
| v. | |
| IVAN REED, COLLRIN, and JOHN DOE, | Patricia T. Morris<br>United States Magistrate Judge |
| *Defendants.* | |

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT COLLRIN'S MOTION FOR SUMMARY JUDGMENT (ECF No. 38)**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Summary Judgment Motion (ECF No. 38) be **GRANTED**. If this Report and Recommendation is adopted, it will result in dismissing Defendant Collrin from the action.

**II.   REPORT**

**A. Introduction**

Plaintiff Deondre Casey is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). (ECF No. 19, PageID.74). He filed this action under 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment right

1

to be free of cruel and unusual punishment and state law claims of assault, battery, and negligence while he was incarcerated at the Macomb Correctional Facility ("MRF"). (*Id.* at PageID.76). Casey's complaint names three prison officials: Ivan Reed, Collrin, and John Doe. (*Id.* at PageID.74–75).

Casey commenced this action on October 31, 2022. (ECF No. 1). He then filed a motion to amend his complaint on May 23, 2023, which the Court granted on July 10, 2023. (ECF Nos. 19, 25). Defendant Collrin filed a motion for summary judgment on the basis of exhaustion. (ECF No. 38). Collrin argues that he should be dismissed from the action as evidence shows that Casey failed to exhaust his administrative remedies. The motion is fully briefed and ready for adjudication.

**B. Procedural and Factual Background**

On the morning of April 10, 2022, Correction Officer ("C.O.") Tate gave Casey permission to reheat his food in the C/D wing dayroom. (ECF No. 19, PageID.76). Reed entered the dayroom while Casey was heating his meal, and asked Casey who let him into the dayroom to which Casey responded "C.O. Tate." (*Id.*). Reed left the dayroom but returned a short time later and directed Casey to leave the dayroom in a threatening manner. (*Id.*). Casey defied Reed and continued to heat his food. (*Id.*). Reed then approached Casey and began insulting and threatening him. (*Id.*). Shortly after, C.O. Tate entered the room, stood in between Casey and Reed, and informed Reed that he had given Casey permission to heat his meal in the

dayroom. (*Id.*). C.O. Tate attempted to guide Reed out of the dayroom, but Reed walked towards Casey and positioned himself in front of him. (*Id.*). When Casey reached for the microwave, Reed proceeded to shove and punch him. (*Id.*). A fight between the Casey and Reed ensued which C.O. Tate attempted to break up. (*Id.*).

Shortly after the altercation began, Defendants Collrin and John Doe entered the breakroom and began tasing Casey. (*Id.* at PageID.77). Reed then began choking Casey while he was on his back. (*Id.*). Collrin and Doe continued tasing him and instructed him to "stop resisting." (*Id.*). Casey was tased a total of four times during this incident. (*Id.*). Once the situation was under control, Collrin and Doe assisted Casey to his feet and escorted him to A-wing segregation. (*Id.*). Casey expressed on several occasions that he was in pain and sensed that he had broken a bone. (*Id.*). At a point, Collrin and Doe were forced to carry Casey into the holding cell as his "legs gave out" while he was walking towards segregation. (*Id.*). After being placed in the cell, Casey again expressed being in pain. (*Id.*). During the walk to segregation, Casey was approached by Reed who stated, using expletives and derogatory terms, that he had beat Casey up. (*Id.*). Moments later, Reed entered A-wing and began expressing, again using expletives, that he just beat Casey up. (*Id.*).

Casey commenced the instant action alleging violation of his Eighth Amendment right, along with state tort claims, seeking monetary damages, declaratory and injunctive relief. (*Id.* at PageID.82). Collrin filed a summary

3

judgment motion on the basis of exhaustion, seeking dismissal from the case. (ECF No. 38).

### C. Legal Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587–88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

### D. Analysis

Under the Prison Litigation Reform Act ("PLRA") of 1996, specifically 42 U.S.C. 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The

4

exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford*, 548 U.S. at 90. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedure, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

MDOC Policy Directive ("P.D.") 03.02.130, effective March 18, 2019, prescribes the three-step administrative exhaustion process for grievable matters.

5

(ECF No. 38-2). At Step I, a prisoner must "attempt to resolve the issue with staff member involved within two business days" and, if unsuccessful, must file a grievance within five business days. (ECF No. 38-2, PageID.144, ¶ Q). To be properly exhausted, a defendant must be named at Step I. P.D. 03.02.130, ¶ S provides:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

(*Id.* at PageID.144) (underscore in original).

If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.146, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. (*Id.* at PageID.147, ¶ HH). Generally, Step III responses will be responded to within 60 business days. (*Id.* at ¶ II).

Collrin contends he is entitled to summary judgment as Casey failed to exhaust his administrative remedies as it relates to the April 10, 2022 incident, and this failure prevented MDOC from addressing and reviewing his claims on the merits. (ECF No. 38, PageID.136). Casey counters that the motion should be denied

because (i) he exhausted his administrative remedies as to Collrin prior to filing this lawsuit, and (ii) there are genuine issues of material fact to be resolved. (ECF No. 41, PageID.171, 178).

First, I will address Casey's contention that summary judgment is not appropriate as the case contains genuine issues of material fact. Casey contends that because he argues he exhausted his remedies and Collrin argues otherwise genuine issues of material fact exist. (ECF No. 41, PageID.179). But this argument is not persuasive and in fact his exhibits undercut his position. At the time he was required to exhaust his remedies, Casey went on observation status due to constant harassment, intimidation, and assault visited upon him by MRF prison officials. (ECF No. 41, PageID.179). However, this fact does not create a genuine issue of material fact. MDOC Policy 03.02.130 states that

> To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved **within ten business days after receiving the Step I response** or, **if no response was received, within ten business days after the date the response was due**, including any extensions.

(ECF No. 38-2, PageID.146, ¶ DD) (emphasis added). The response to his Step I grievance was dated April 18, 2022 and yet his Step II appeal was filed on August 12, 2022. (ECF No. 41, PageID.184). He argues that the delay was due to his time

7

in observation (i.e., on suicide watch) and that while there he was not permitted to receive or have personal items. (*Id.* at PageID.172, 179, 184). The Step I grievance decision was returned on April 20, 2022 while he was still on observation status. (*Id.* at PageID.172). He was released from observation status on May 18, 2022 but did not file his Step II appeal until August 12, 2022. (*Id.* at PageID.172, 184). Even if the personal property he was prohibited from having while on observation status comprised of pen and paper[1], Casey still waited almost three months before he filed his Step II appeal. Despite Casey's unfortunate circumstances, his explanation of being unable to have personal items while under observation does not provide the Court with an understanding as to why he did not appeal the decision until August 2022.

Next, Casey's failure to identify Collrin is either his Step I or Step II grievances also cuts against his argument that he exhausted his administrative remedies. In his Step I grievance, Casey states that during the altercation between him and Reed "the other C.O.'s arrived" and without knowing what just occurred

---

[1] Paragraph DD of the MDOC Policy states that if a prisoner does not receive a response, he or she is permitted to file a Step II appeal "within ten business days after the date the response was due. . . ." (ECF No. 38-2, PageID.146, ¶ DD). Thus, if Casey had access to pen and paper while under observation, he could have filed a Step II appeal even if he did not receive a response. But he did not do so. Instead he waited until August 12, 2022, over four months after the Step I response was issued, to file his Step II appeal. Thus, per MDOC policy his appeal was untimely.

they tased him. (ECF No. 41, PageID.182). His Step II grievance contains no reference to Collrin whatsoever. (*Id.* at PageID.184).

The Sixth Circuit has found that MDOC P.D. 03.02.130(S)'s directive requires a prisoner to name each person grieved. (ECF No. 38-2, PageID.144); *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. Mar. 13, 2009). Failure to do so amounts to a failure to exhaust and exposes a claim to the possibility of dismissal. *Mitchell v. Klee*, No. 13-13632, 2015 WL 1510441, at *5 (E.D. Mich. Mar. 25, 2015); *Burnett v. Eelbode*, Case No. 18-12471, 2021 WL 1152998, at *5 (E.D. Mich. Mar. 26, 2021) ("Because Plaintiff did not name [defendant] at Step I of the grievance, Plaintiff failed to properly exhaust his administrative remedies as to this Defendant.").

> Although a failure to name a specific individual in a grievance may not always render exhaustion inadequate, especially where the grievance is addressed on the merits and not rejected as unduly vague, *a plaintiff fails to exhaust administrative remedies as to a particular defendant not identified in the grievance if the plaintiff specifically identifies other defendants by name and nothing in the grievance would put the unnamed defendants on notice.*

*Kensu v. Rapelje*, No. 12-11877, 2013 WL 1774637, at *4 (E.D. Mich. Apr. 25, 2013) (internal citations omitted) (emphasis added). Here, Collrin was not identified by name in either the Step I or II grievance. Further, although Casey alluded to the presence of "other C.O.'s" the language in his grievance does not signal that they

9

should have been aware that he intended to file a grievance against them. He states that they were not aware of what was going on during the altercation between him and Reed when they came in and tased him. (ECF No. 41, PageID.182). Casey has provided no explanation in his response as to why he failed to identify Collrin in his grievances and thus has provided the Undersigned with no insight or support as to why his claim should not be dismissed for failure to exhaust. *Horn v. Bay County Sheriff's Dept.*, No. 07-10116, 2008 WL 3285808, at *8 (E.D. Mich. Aug. 7, 2008) ("Where there is a failure to exhaust, the court will not reach the merits of the complaint; rather, the complaint will be dismissed without prejudice").

Last, even if Casey's grievances were construed as giving sufficient information to put Collrin on notice and his Step III appeal was submitted correctly his complaint was preemptively filed. Casey could not have appealed the Step II decision earlier than August 30, 2022. (ECF No. 41, PageID.190). Pursuant to MDOC Policy 03.02.130 ¶ II, Step III response are generally responded to within 60 business days. (ECF No. 38-2, PageID.147). Thus, the MDOC had until approximately November 28, 2022 to respond to Casey's Step III appeal. However, Casey filed his complaint on October 31, 2022, which was almost a month before the Step III response was due to be issued. *Wirick v. Golladay*, No. 2:12-CV-474, 2014 WL 1028922, at *3 (W.D. Mich. Mar. 14, 2014) ("The administrative process must be complete before a prisoner may file an action in federal court. In order to

complete the administrative process, Plaintiff must wait until he receives a response to his step III grievance, or if he does not receive a response, until 120 days after he has filed his step I grievance.") (internal citations omitted).

Despite Casey's valiant efforts, his responses fall short. There is no question of material fact as the evidence shows Casey did not properly exhaust the claims lodged against Collrin raised in this lawsuit. *See Jones*, 549 U.S. at 218–19; *Woodford*, 548 U.S. at 90–93; *Spencer v. Watkins*, Case No. 1:16-cv-106, 2017 WL 2912960, at *3 (W.D. Mich. June 8, 2017); *Hutchinson v. Tawney*, No. 1:13cv285, 2013 WL 6858451, at **3–4 (W.D. Mich. Dec. 30, 2013). Accordingly, Defendant Collrin's motion for summary judgment should be granted.

### E. Conclusion

For these reasons, I recommend **GRANTING** Defendant Collrin's motion for summary judgment (ECF No. 38).

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right

11

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 28, 2024                                        S/ PATRICIA T. MORRIS
                                                               Patricia T. Morris
                                                               United States Magistrate Judge