**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEONDRE CASEY,                                          Case No. 2:22-cv-12604

        *Plaintiff,*                                 Jonathan J.C. Grey
                                            United States District Judge

*v.*

                                            Patricia T. Morris
IVAN REED and JOHN DOE,                     United States Magistrate Judge

        *Defendants.*

_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT IVAN REED'S MOTION FOR SUMMARY JUDGMENT
(ECF No. 46)</u>**

I.     **<u>RECOMMENDATION</u>**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant

Reed's Summary Judgment Motion (ECF No. 46) be **GRANTED**.  If this Report

and Recommendation is adopted, it will result in dismissing Defendant Ivan Reed

from the action without prejudice, and leave John Doe as the only remaining

defendant.

II.    **<u>REPORT</u>**

    **A. Introduction**

Plaintiff Deondre Casey is a prisoner in the custody of the Michigan

Department of Corrections ("MDOC").  (ECF No. 19, PageID.74).  He commenced

this action under 42 U.S.C. § 1983 on October 31, 2022, and then filed a motion to amend his complaint on May 23, 2023.  (ECF Nos. 1, 19).  The Court granted his motion on July 10, 2023.  (ECF Nos. 19, 25).  In the operative complaint he alleges a violation of his Eighth Amendment right to be free of cruel and unusual punishment, and state law claims of assault, battery, and negligence during his incarceration at the Macomb Correctional Facility ("MRF").   (ECF No. 19, PageID.76).  His complaint identifies three prison officials: Ivan Reed, Collrin, and John Doe.  (*Id.* at PageID.74–75).

Defendant Collrin filed a motion for summary judgment on the basis of exhaustion, which was granted by the Court, and was subsequently dismissed from the action. (ECF Nos. 38, 48, 51).  Defendant Ivan Reed now moves for summary judgement on the basis Casey failed to exhaust his administrative remedies, and adopts by reference[1] the arguments contained in Collrin's motion.  (ECF No. 46).  The motion is fully briefed and ready for adjudication.

---

[1] Reed cites Rule 10(c) of the Federal Rules of Civil Procedure as the basis for adopting Collrin's motion by reference. (ECF No. 46, PageID.213).  However, this Rule does not provide support for the proposition Reed attempts to support.  Rule 10(c) states that "[a] **statement in a <u>pleading</u> may be adopted by reference elsewhere** in the same pleading or in any other pleading or motion." (emphasis added).  It does not state that statements in previously filed motions may be adopted by reference into separate subsequently filed motions.  Because Reed's failure to exhaust argument is ultimately identical to that raised by Collrin, as it is based on the same grievances and appeals, the Undersigned will address Reed's motion by referring to the arguments raised in, along with the exhibits attached to, Collrin's motion (ECF No. 38) and issue a recommendation accordingly.

**B. Procedural and Factual Background**

On the morning of April 10, 2022, Correction Officer ("C.O.") Tate gave Casey permission to reheat his food in the C/D wing dayroom. (ECF No. 19, PageID.76). Reed entered the dayroom while Casey was heating his meal, and asked Casey who let him into the dayroom to which Casey responded "C.O. Tate." (*Id.*). Reed left the dayroom but returned a short time later and directed Casey to leave the dayroom in a threatening manner. (*Id.*). Casey defied Reed and continued to heat his food. (*Id.*). Reed then approached Casey and began insulting and threatening him. (*Id.*). Shortly after, C.O. Tate entered the room, stood in between Casey and Reed, and informed Reed that he had given Casey permission to heat his meal in the dayroom. (*Id.*). C.O. Tate attempted to guide Reed out of the dayroom, but Reed walked towards Casey and positioned himself in front of him. (*Id.*). When Casey reached for the microwave, Reed proceeded to shove and punch him. (*Id.*). A fight between Casey and Reed ensued which C.O. Tate attempted to break up. (*Id.*).

Shortly after the altercation began, Defendants Collrin and John Doe entered the breakroom and began tasing Casey. (*Id.* at PageID.77). Reed then began choking Casey while he was on his back. (*Id.*). Collrin and Doe continued tasing him and instructed him to "stop resisting." (*Id.*). Casey was tased a total of four times during this incident. (*Id.*). Once the situation was under control, Collrin and Doe assisted Casey to his feet and escorted him to A-wing segregation. (*Id.*). Casey

3

expressed on several occasions that he was in pain and sensed that he had broken a bone. (*Id.*). And at one point, Collrin and Doe were forced to carry Casey into the holding cell as his "legs gave out" while he was walking towards segregation. (*Id.*). During the walk to segregation, Casey was approached by Reed who stated, using expletives and derogatory terms, that he had beat Casey up. (*Id.*). After being placed in the cell, Casey again expressed being in pain. (*Id.*). Moments later, Reed entered A-wing and began expressing, again using expletives, that he just beat Casey up. (*Id.*).

Casey commenced the instant action alleging violation of his Eighth Amendment right to be free from cruel and unusual punishment, along with state tort claims, seeking monetary damages, declaratory and injunctive relief. (*Id.* at PageID.82). Reed moved for summary judgment on the basis of exhaustion, relying upon the arguments raised in Collrin's motion, seeking dismissal from the action. (ECF No. 46).

**C. Legal Standard**

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that would affect "the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not "to

weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ." *Id.* at 249–50, 255.  Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993).  The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later.  10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998).  "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D.N.J. 2010).  In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.  And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . .

'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

Further, the nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)). Instead, the nonmoving party must show that there is sufficient evidence in the record for a reasonable factfinder to find in its favor. *Anderson*, 477 U.S. at 248, 252. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

### D. Analysis

#### 1. Defendant Reed's Summary Judgment Motion

Under the Prison Litigation Reform Act ("PLRA") of 1996, specifically 42 U.S.C. 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The

exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford*, 548 U.S. at 90.

One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedure, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

MDOC Policy Directive ("P.D.") 03.02.130, effective March 18, 2019, prescribes the three-step administrative exhaustion process for grievable matters.

(ECF No. 38-2).  At Step I, a prisoner must "attempt to resolve the issue with staff member involved within two business days" and, if unsuccessful, must file a grievance within five business days.  (*Id.* at PageID.144, ¶ Q).  To be properly exhausted, a defendant must be named at Step I.  P.D. 03.02.130, ¶ S provides:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included.

(*Id.* at PageID.144) (underscore in original).

If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form.  (*Id.* at PageID.146, ¶ DD).  Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance.  (*Id.* at PageID.147, ¶ HH).  Generally, Step III responses will be responded to within 60 business days. (*Id.* at ¶ II).

Reed contends he is entitled to summary judgment as Casey failed to exhaust his administrative remedies as it relates to the April 10, 2022 incident, and this failure prevented MDOC from addressing and reviewing his claims on the merits.

(ECF No. 46 (adopting by reference ECF No. 38, PageID.136))[2].  Casey counters

that the motion should be denied because there are genuine issues of material facts

to be resolved concerning whether he exhausted his administrative remedies as to

Reed prior to filing this lawsuit.  (ECF No. 49, PageID.229, 233, 235).  Casey, again,

contends that because he contests Reed's argument that he exhausted his

administrative remedies, genuine issues of material fact exist.  (ECF No. 49,

PageID.238).   But Casey's exhibits undercut his position.   At the time he was

required to exhaust his remedies, Casey went on observation status due to constant

harassment, intimidation, and assault visited upon him by MRF prison officials.  (*Id.*

at 230–31, 238–39).  While in observation status, "inmates are not allowed to have

any personal property in their cells." (*Id.* at PageID.230).  However, the fact that he

was in observation status at the time he was required to exhaust his remedies does

not create a genuine issue of material fact as he went on observation on April 19,

2022, and was "forced off observation status" on May 18, 2022, but did not file his

Step II appeal until August 12, 2022.  (*Id.* at PageID.230, 248).

MDOC Policy 03.02.130 states that

> To file a Step II grievance, the grievant must request a
> Prisoner/Parolee Grievance Appeal (CSJ-247B) from the
> Step I Grievance Coordinator and send the completed
> form to the Step II Grievance Coordinator designated for
> the facility, field office, or other office being grieved

---

[2] Going forward, the Undersigned will include citations to only Collrin's motion as
this document contains the substantive arguments Reed relies upon.

> **within ten business days after receiving the Step I
> response** or, **if no response was received, within ten
> business days after the date the response was due**,
> including any extensions.

(ECF No. 38-2, PageID.146, ¶ DD) (emphasis added).  The response to Casey's Step

I grievance was dated April 18, 2022, and yet his Step II appeal was filed on August

12, 2022.  (ECF No. 41, PageID.243).  He argues that the delay was due to his time

in observation (i.e., on suicide watch) and that while there he was not permitted to

receive or have personal items.  (*Id.* at PageID.230, 245).  The Step I grievance

decision was returned on April 20, 2022 while he was still on observation status.

(*Id.* at PageID.241).  He was released from observation status on May 18, 2022 and

yet did not file his Step II appeal until August 12, 2022.  (*Id.* at PageID.243).  Even

if the personal property he was prohibited from having while on observation status

comprised of pen and paper, Casey still waited almost three months before he filed

his Step II appeal.  Despite Casey's unfortunate circumstances, his explanation of

being unable to have personal items while under observation does not explain why

he did not appeal the decision until August 2022.

Further, Casey was not required to wait until he received a response to his

grievance before filing a Step II appeal.  Paragraph DD of the MDOC Policy states

that if a prisoner does not receive a response, he or she is permitted to file a Step II

appeal "within ten business days after the date the response was due. . . ."  (ECF No.

38-2, PageID.146, ¶ DD).  Even if the response to his grievance was delayed, Casey

could have filed an appeal the day he was released from observation—as shown by the fact that Casey filed an entirely separate grievance the day he was released. (ECF No. 49, PageID.245–46). But he did not do so. Instead, he waited until August 12, 2022, over four months after the Step I response was issued, to file his Step II appeal. (*Id.* at PageID.243). Thus, per MDOC policy his appeal was untimely.

Last, even if Casey's Step III appeal was submitted correctly, his complaint was prematurely filed. Casey could not have appealed the Step II decision earlier than August 30, 2022. (ECF No. 49, PageID.243). Pursuant to MDOC Policy 03.02.130 ¶ II, Step III appeals are generally responded to within 60 business days. (ECF No. 38-2, PageID.147). Thus, the MDOC had until approximately November 28, 2022 to respond to Casey's Step III appeal. However, Casey filed his complaint on October 31, 2022, which was almost a month before the Step III response was due to be issued. *Wirick v. Golladay*, No. 2:12-CV-474, 2014 WL 1028922, at *3 (W.D. Mich. Mar. 14, 2014) ("The administrative process must be complete before a prisoner may file an action in federal court. In order to complete the administrative process, Plaintiff must wait until he receives a response to his step III grievance, or if he does not receive a response, until 120 days after he has filed his step I grievance.") (internal citations omitted).

Despite Casey's valiant efforts, his responses fall short. There is no question of material fact as the evidence shows Casey did not properly exhaust the claims

lodged against Reed raised in this lawsuit. *See Jones*, 549 U.S. at 218–19; *Woodford*, 548 U.S. at 90–93; *Spencer v. Watkins*, Case No. 1:16-cv-106, 2017 WL 2912960, at *3 (W.D. Mich. June 8, 2017); *Hutchinson v. Tawney*, No. 1:13cv285, 2013 WL 6858451, at **3–4 (W.D. Mich. Dec. 30, 2013).   Accordingly, the Undersigned recommends that Reed's motion for summary judgment be granted, and Reed be dismissed from the action.

### E.   Conclusion

For these reasons, I recommend **GRANTING** Defendant Reed's motion for summary judgment (ECF No. 46) and **DISMISSING** Reed from the action without prejudice.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."   Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise

others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 16, 2024

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge